[No. B208839. Second Dist., Div. One. May 13, 2011.]

ILSHIN INVESTMENT CO., LTD., Plaintiff and Appellant, v. BUENA VISTA HOME ENTERTAINMENT, INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I.A., B., and II.

614

**COUNSEL**

Gibson, Dunn & Crutcher, Scott A. Edelman, Daniel M. Flores; Tantalo & Adler and Michael S. Adler for Plaintiff and Appellant.

White O'Connor Fink & Brenner, Andrew M. White, Tami Kameda; Horvitz & Levy, Frederic D. Cohen and Julie L. Woods for Defendant and Appellant.

OPINION

**CHANEY, J.**—Ilshin Investment Co., Ltd. (Ilshin), a Korean company, loaned funds to Last Patriot Productions, Inc. (Last Patriot), to enable production of The Patriot, a film starring Steven Seagal. Last Patriot obtained the necessary bank financing and completed the film, but was unable to repay its obligations to Ilshin and others.[1]

When the completed film failed to obtain theatrical distribution, Last Patriot entered into an exclusive agreement (the Agreement) for its home video distribution by Buena Vista Home Entertainment, Inc. (Buena Vista), for an eight-year term ending in approximately June 2007. The Agreement provided that Buena Vista's fee would be a percentage of the distribution proceeds, and permitted Buena Vista to recoup its expenses before paying the balance of the proceeds to Last Patriot. But the Agreement expressly required Buena Vista to obtain Last Patriot's consent before incurring recoupable distribution expenses in excess of $900,000.[2]

Buena Vista distributed The Patriot from mid-1999 until October 2005, with sales far exceeding the parties' expectations.[3] Between May 1, 1998, and September 30, 2006, United States distribution receipts were almost $13.5 million, from which Buena Vista earned fees of $3 million and paid over $4.7 million to Last Patriot and its creditors. But when distribution costs reached the $900,000 threshold early in the venture, Buena Vista did not seek or obtain Last Patriot's consent to continue recouping expenses, as the Agreement required.

In February 2006, Ilshin filed suit against Buena Vista. As a judgment creditor standing in Last Patriot's shoes, Ilshin alleged that Buena Vista had breached the Agreement by incurring and recouping distribution costs above

---

[1] Unless otherwise significant, this opinion refers to Last Patriot collectively along with the various creditors, subsidiaries, agents, and others that obtain their rights through Last Patriot, that joined with Last Patriot or acted on its behalf, or that otherwise need no individual identification here.

[2] We omit and disregard terms of the Agreement and facts not at issue here, concerning The Patriot's theatrical and other media distribution, and its distribution in markets outside of the United States.

[3] Last Patriot's representative based his negotiations for the Agreement on his projection that the film might generate about $4 million in gross domestic home video revenue. Buena Vista's draft pre-Agreement financial projections anticipated gross revenues of from under $5 million to about $7.8 million.

the $900,000 threshold without Last Patriot's consent, and by ending the film's distribution before the natural expiration of the Agreement's eight-year term. Its complaint also included a cause of action for conversion. For its contract claims Ilshin sought to recover the excessive costs Buena Vista had deducted, and the profits Last Patriot would have earned from continuing sales; for its tort claim, Ilshin sought the same compensatory damages, plus punitive damages.

After bifurcation of the conversion claim and a bench trial of the contract claims, the trial court awarded Ilshin contract damages for all the costs above $900,000 that Buena Vista had deducted after June 26, 2001, the date two years before Ilshin's 2003 service of its levy on Buena Vista, totaling $3,775,197 plus prejudgment interest. The court also awarded Ilshin another $800,000 for its lost profits from October 2005, when Buena Vista ended the film's distribution, until the end of the Agreement's eight-year term.

And it awarded Ilshin attorney fees and costs totaling $1,492,643.71.

Buena Vista appeals from these damage awards, and from the trial court's award of attorney fees. Ilshin, too, appeals from the judgment, challenging a ruling that limited the period for which Ilshin could recover excess costs, and rulings that prevented it from seeking punitive damages based on its tort claim against Buena Vista.

With respect to Buena Vista's appeal, we reverse the trial court's damage award in part with respect to the amount of contract damages, and lost profits damages. The attorney fee award must also be set aside, for the law does not authorize the award of attorney fees for a prevailing plaintiff in an independent creditor's suit.

With respect to Ilshin's appeal, we affirm the trial court's imposition of a two-year limitation on the period for which Ilshin could recover damages for Buena Vista's excessive recoupment of distribution costs. We find, however, that the trial court erred by refusing to enter a directed verdict against Buena Vista on the conversion claim. These errors will require reversal of the judgment and remand to the trial court for its redetermination of appropriate damages and for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURE BACKGROUND

*Financing and Production of The Patriot*

In 1993 Ilshin loaned funds to Last Patriot as seed money to obtain bank financing for the production of a film entitled The Patriot, starring Steven Seagal. Last Patriot obtained bank financing and completed the film, but did not repay its obligations to Ilshin and others.

### 1. *The Distribution Agreement*

When The Patriot failed to obtain theatrical distribution, Last Patriot entered into the Agreement for videocassette and DVD distribution of the film by Buena Vista. The Agreement granted exclusive United States home video distribution rights to Buena Vista for or eight years, plus a six-month, nonexclusive, selloff period.

#### a. *Buena Vista's distribution fee*

Under the Agreement, Buena Vista was entitled to a distribution fee, calculated as a percentage of "Defined Receipts." Defined Receipts consisted of gross billings after certain adjustments (primarily for refunds, rebates, and reserves, as discussed below in greater detail). Buena Vista's distribution fee was computed as 20 percent of the first $4.5 million of Defined Receipts, 22 percent of receipts from $4.5 million to $7 million, and 25 percent of receipts above $7 million.

#### b. *Buena Vista's right to recoup distribution expenses*

The Agreement provided that after payment of its distribution fee, Buena Vista could recoup "all actual distribution costs and expenses paid, accrued, or incurred" for the film's distribution. The Agreement broadly defines the distribution costs that are recoupable by Buena Vista, specifically including costs for rebates, sales incentives, and price protections, as well as for any "music [costs], talent clearances and residuals" that Buena Vista elected to pay.

"Rebates" are amounts typically paid by Buena Vista to subdistributors and retail sellers (or deducted from the payments due from them) as incentive to

meet a particular sales volume. "Price protections" are amounts deducted by Buena Vista from amounts owed by sellers after Buena Vista has lowered the price of unsold videocassettes and DVD's, to obviate the expense of exchanging returned items for lower priced replacements. The "music [costs], talent clearances and residuals" are royalty obligations, computed as a percentage of receipts, owed by Last Patriot to industry guild members (such as actors, directors, screenwriters, musicians, etc.). Although they are undisputedly obligations of Last Patriot (the film's producer), not Buena Vista (the distributor), the Agreement expressly entitles Buena Vista to pay Last Patriot's residual obligations and recoup those amounts from Last Patriot's share of the proceeds, because Last Patriot's failure to pay residuals would jeopardize Buena Vista's ability to continue distributing the film.[4] The Agreement provides express indemnities by Last Patriot for any residual payments Buena Vista makes on its behalf.

### c. *Last Patriot's contingent compensation*

The Agreement provided that after its fees and distribution expenses were deducted, Buena Vista would remit to Last Patriot 100 percent of the funds remaining—the "Contingent Compensation"—in installments. Under the Agreement, Buena Vista's periodic distribution statements "shall be deemed to be accounts stated and not subject to audit two (2) years after each statement is rendered" by Buena Vista.

### d. *The consent clause*

During the negotiation of the Agreement, Last Patriot obtained Buena Vista's agreement to insert a "consent clause," providing that Buena Vista must obtain Last Patriot's consent before incurring more than $900,000 of "recoupable" distribution costs.[5] There was evidence that those negotiating the Agreement on Last Patriot's behalf intended the consent clause to protect it from the possibility that Buena Vista might incur excessive distribution expenses, thereby reducing Last Patriot's ultimate return under the Agreement. According to one of Last Patriot's negotiators, the consent clause also

---

[4] When Last Patriot became unable to pay its residual obligations and declared bankruptcy in October 2001, copyright laws and agreements permitted the guilds to enforce them directly against Buena Vista, the distributor. Buena Vista therefore paid the residuals on Last Patriot's behalf—as the Agreement permitted it to do—in order to prevent the guilds from seizing the film and ending its distribution.

[5] The provision's actual wording is: "It is understood and agreed that [Buena Vista] shall incur no more than Nine Hundred Thousand Dollars ($900,000) of recoupable U.S. Distribution Costs without your prior consent."

allocated risk between Buena Vista and Last Patriot as to how well sales would go under the Agreement. If sales were low (as Last Patriot's negotiator feared), Last Patriot would bear the risk that expenses might be a large proportion of revenue, while Buena Vista would bear the risk that the consent clause would cap recoupable expenses if sales were high.

The Agreement does not indicate the circumstances that would justify Last Patriot in either granting or withholding its consent to Buena Vista's recouping distribution expenses above the $900,000 threshold, nor the effect on the parties' rights and obligations if Last Patriot did not grant its consent. Nothing in the Agreement explicitly requires Buena Vista to devote any particular level of effort to the film's distribution, or to exert efforts or funds to maintain distribution during the Agreement's entire eight-year term.

### 2.  *Receipts and expenses during the film's distribution*

When they negotiated the Agreement, the parties each anticipated that the film's United States home video distribution would generate receipts in the area of $4 million over the Agreement's eight-year term. But its distribution enjoyed far greater success. As early as September 1999, just a few months into the distribution enterprise, Buena Vista had obtained about $3.7 million in Defined Receipts, with costs of slightly over $1.2 million and fees to Buena Vista of $742,000.

Each quarterly participation statement reported to Last Patriot the amount of distribution costs incurred by Buena Vista, and showed that those costs had been reimbursed before distributing Last Patriot's share. But Buena Vista did not at any time seek Last Patriot's consent under the Agreement's consent clause.

By the time Buena Vista issued its participation statement for the period ending March 31, 2001, the cumulative Defined Receipts had reached $7.3 million, from which Buena Vista had received fees of almost $1.5 million and had recouped costs of just under $1.9 million, yielding over $4.3 million in Contingent Compensation to Last Patriot and its creditors.

Buena Vista's final participation statement, for the period ending June 23, 2005, reported cumulative distribution receipts of almost $13.5 million, fees to Buena Vista of over $3 million, costs recouped by Buena Vista of $5.66 million, and over $4.7 million paid to Last Patriot and its creditors.

### 3. *Ilshin obtains a lien against Last Patriot and serves a levy on Buena Vista.*

In February 2001, Ilshin obtained a stipulated $6.6 million judgment against Last Patriot (and others) arising from Last Patriot's failure to satisfy its loan obligations arising from production of The Patriot.

### 4. *The parties assert conflicting positions with respect to the meaning of the Agreement's consent clause.*

In a July 2001 letter to Buena Vista, Last Patriot noted that as of March 31, 2001, about two years into the film's distribution, Buena Vista had incurred distribution costs totaling over $1.9 million, and charged that Buena Vista's deduction of amounts exceeding the $900,000 threshold was improper because Buena Vista had neither requested nor received Last Patriot's consent.

Buena Vista's internal analysis following Last Patriot's letter concluded that if it were to apply a $900,000 cap to all its distribution expenses, by the end of the Agreement's eight-year term its net distribution fee—its only net return from the Agreement—would be wholly consumed. It estimated that distribution costs would entirely consume the almost $2 million it had so far earned, and another $1.9 million as well, leaving Buena Vista with an enormous loss for its highly successful distribution efforts. At the same time, Last Patriot's share of the proceeds, as of September 2001, would increase from $4.5 million to about $5.3 million, and would rise to more than $8.8 million during the Agreement's remaining term. In other words, the more videos Buena Vista sold, the more money it would lose.

Buena Vista soon afterward informed Last Patriot of its position that— notwithstanding the Agreement's literal definition of distribution costs—the parties had not intended that the consent clause's limit on "distribution" costs would incorporate the Agreement's broad definition of expenses that were recoupable by Buena Vista. While the listed items were recoupable by Buena Vista, the consent clause's reference to distribution costs was intended instead to refer only to advertising and marketing expenses, rather than adjustments to receipts such as to rebates and price protections, or to. residual payments made by Buena Vista on Last Patriot's behalf.[6]

Buena Vista contended without evidentiary support that it informed Last Patriot at that time that Buena Vista would have to end its distribution of the film if Last Patriot were to seek reimbursement of the distribution expenses

---

[6] Under this interpretation, Buena Vista contended, costs did not reach the $900,000 threshold until sometime in 2005. The trial court soundly rejected Buena Vista's position on this point in its statement of decision, and it is not at issue in this appeal.

over $900,000; Last Patriot did not recall any such communication, and Buena Vista in any event received no response from Last Patriot. According to Buena Vista, it assumed Last Patriot had accepted its analysis and had dropped the issue.[7]

In January 2002, Comerica Bank, along with the Screen Actors Guild and the Directors Guild of America, threatened to sue Last Patriot, Ilshin, and others, for failing to make required payments for loans and residuals with respect to The Patriot and other projects.

In early May 2002, the issue of the Agreement's consent clause and $900,000 expense reimbursement cap was again raised, this time in a letter to Buena Vista on behalf of a creditor of Last Patriot. The letter demanded reimbursement of $1,645,350 on Last Patriot's behalf, noting that Buena Vista had deducted distribution costs totaling almost $2.2 million by June 30, 2001, and by September 30, 2001, the total was over $2.5 million. Buena Vista responded in June 2002, explaining its position that there had been a mistake in the Agreement's language, because a deal capping all distribution costs at $900,000 would make no economic sense, and no one would have made it intentionally.

Buena Vista agreed during the parties' discussions to toll any unexpired statutes of limitations until September 30, 2002.

### 5. *Ilshin asserts liens.*

In June 2003, Ilshin, as a judgment creditor of Last Patriot, served Buena Vista with a levy seeking funds due Last Patriot, accompanied by a letter indicating it sought proceeds payments as they became due. In response, Buena Vista directed payments owed Last Patriot under the Agreement to Last Patriot's creditors, including various guilds, Comerica Bank, and Ilshin.

In June 2004, Ilshin claimed that Buena Vista had recouped more than $3.6 million in distribution costs that were excessive under the Agreement. The parties then entered into a formal agreement tolling any statutes of limitations. (The parties' tolling agreements do not affect any issues in this appeal.)

In August 2005, Ilshin renewed its claim that Buena Vista had recouped excessive distribution expenses in violation of the Agreement. Buena Vista's October 2005 response again explained that the parties intended the consent clause to apply just to advertising costs, but not to all distribution costs, and especially not to residual payments made by Buena Vista on Last Patriot's

---

[7] Buena Vista's representative testified that if Last Patriot had pressed the issue, Buena Vista would have terminated the distribution of the film in 2001, as it actually did when Last Patriot raised the issue in 2005.

behalf. As Buena Vista explained, otherwise Buena Vista would have no incentive to continue making sales once distribution costs had reached $900,000, and that it would not have paid residuals owed by Last Patriot unless it could deduct those payments from the proceeds it distributed on Last Patriot's behalf.

6. *Buena Vista terminates The Patriot's distribution.*

In October 2005, Buena Vista concluded that it could not reach agreement with Last Patriot and its successors with respect to the appropriate application of the consent clause, and that continuing to distribute The Patriot would cause it to incur expenses that it could not recoup, impairing its distribution fee. It therefore ended the film's distribution in October 2005.

As of September 30, 2006, defined proceeds had reached $13,467,850, Buena Vista had earned distribution fees of $3,066,929, it had recouped $5,658,432 for its distribution costs, and it had distributed $4,742,489 to Last Patriot and its creditors.[8]

Ilshin filed suit against Buena Vista on February 23, 2006. As a creditor's suit pursuant to Code of Civil Procedure section 708.210, the suit alleged breaches of Buena Vista's obligations to Last Patriot under the Agreement, seeking damages for Buena Vista's unauthorized recoupment of costs in excess of the $900,000 expense limit, and for prematurely ending distribution of The Patriot before the June 2007 end of the Agreement's eight-year term. Ilshin's suit also included claims brought on its own behalf for conversion, punitive damages, and for equitable relief arising from the same facts.

Because it was undisputed that Ilshin's creditor's claim could not be heard by a jury, the trial court bifurcated "all aspects of this case except the conversion claim" for a bench trial upon the parties' stipulation, to be followed, if necessary, by a jury trial of the tort claim. By summary adjudication the trial court held that the contract language with respect to the Agreement's $900,000 limit on Buena Vista's recoupment of costs is unambiguous, and that Buena Vista's misunderstanding or mistake as to its meaning (if any) was unilateral. It limited Last Patriot's proof of contract damages for Buena Vista's recoupment of excessive costs to recoupments reported after June 2001. And it struck Last Patriot's claim for punitive damages.

At the conclusion of the phase-one trial, the court rejected Buena Vista's key contention that the parties had understood and intended that the Agreement's consent clause, with its $900,000 cost reimbursement limit, would

---

[8] As of that date Buena Vista reported that it had paid $567,638 in residuals owed by Last Patriot.

apply only to certain marketing expenses, rather than to all costs that the Agreement elsewhere listed as recoupable distribution costs. For Buena Vista's breach in reimbursing itself for costs above the $900,000 expense limit, the trial court found that Ilshin was entitled to damages of $3,775,197, representing the amount in excess of $900,000 for which Buena Vista had reimbursed itself after the June 2001 cutoff, plus prejudgment interest on that amount.

The court ruled also that Buena Vista had breached its implied covenant of good faith and fair dealing by prematurely ending its distribution of The Patriot in October 2005, more than 18 months before the natural end of the Agreement's eight-year term. For that breach it awarded Ilshin lost profits damages of $800,000.

After the phase-one trial, the court denied Ilshin's motion for entry of a directed verdict on the conversion cause of action, holding that before judgment could be entered Buena Vista would be entitled to a jury trial of at least some issues. Ilshin then filed a voluntary dismissal of its conversion claim. The court awarded Ilshin costs of $53,440.63, and attorney fees of $1,439,203.08 under Code of Civil Procedure section 701.020, subdivision (c).

Judgment was entered April 23, 2008, and notice of its entry was filed and served May 1, 2008. Buena Vista timely appealed from the judgment on June 20, 2008. Buena Vista's appeal seeks reversal of the judgment with directions, contending that the damage award is unsupported, or if not, that it is excessive. In the alternative, it seeks reversal of the lost profits award, contending that it is unsupported by substantial evidence, and reversal of the attorney fee award on the grounds that Code of Civil Procedure section 701.020, subdivision (c), is inapplicable to this action and the award is in any event not supported by sufficient evidence.

On July 9, 2008, Ilshin filed its own timely appeal from the judgment. Ilshin's appeal asks that we order the judgment amended to add the $983,235 of additional cost reimbursements reported by Buena Vista before the two-year cutoff imposed by the trial court, plus interest on that amount, and that we affirm the judgment for contract damages and attorney fees, as amended. Ilshin's appeal asks also that we reinstate its claims for conversion and punitive damages against Buena Vista.

Because we conclude that certain of Buena Vista's affirmative contentions are well taken, we reverse the judgment in part, but otherwise affirm.

# DISCUSSION

I. *Buena Vista's Appeal*

*Summary of Conclusions*

> *Buena Vista has not established that Last Patriot was not damaged as a result of its failure to obtain Last Patriot's consent under the Agreement's consent clause.*

Buena Vista's appeal does not directly challenge the ruling that the consent clause imposed a $900,000 limit on the distribution costs Buena Vista could recoup without Last Patriot's consent, and that Buena Vista breached that provision by recouping costs in excess of that limit. Instead it argues that as a matter of law its failure to obtain Last Patriot's consent under the consent cause resulted in no damages to Last Patriot (and therefore to Ilshin), and it seeks reversal of the award of contract damages on that ground.

We reject Buena Vista's challenge on this issue, for it is contrary to the trial court's fully supported interpretation of the Agreement. We find, however, that the trial court erred in including within its damage award certain sums that cannot be found to be included within the consent clause's $900,000 limit on recoupable costs. Because that error will require redetermination of the date on which Buena Vista's recoupable costs reached the $900,000 threshold and the amount of the contract damages to which Last Patriot is entitled, the matter will be remanded to the trial court with directions to redetermine those facts and to appropriately adjust any other determinations that rely on them.

> *The record does not support the $800,000 award for lost profits damages.*

In light of the trial court's fully supported ruling that Buena Vista was obligated to continue its distribution efforts until the natural end of the Agreement's term in June 2007, Ilshin was entitled to seek lost profits damages for the proceeds to which Last Patriot would have been entitled during the period after Buena Vista prematurely ended the film's distribution.

We find, however, that the evidence does not support the full amount of the court's award of lost profits damages. We therefore reduce the award to the maximum amount that the evidence could support, as adjusted to account for redetermination of the date on which Buena Vista's recoupable costs reached the $900,000 threshold, and affirm the award as modified.

*Ilshin is not entitled to the attorney fee award.*

Ilshin, a judgment creditor of Last Patriot, brought a creditor's suit against Buena Vista seeking contract damages for amounts Buena Vista allegedly owed to Last Patriot under the Agreement. Because there is no statutory authorization for an award of attorney fees to a prevailing creditor in an independent creditor's suit, the fee award to Ilshin cannot stand.

*Ilshin is not entitled to a conversion verdict.*

We find that Ilshin has failed to demonstrate prejudice resulting from the trial court's order striking its punitive damage claim at the outset of the phase-one trial, or from the court's refusal to direct a conversion verdict against Buena Vista at the close of the phase-one trial.

*Discussion*

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *The Trial Court Lacked Discretion to Award Attorney Fees to Ilshin Under Code of Civil Procedure Section 701.020.*

Ilshin moved for an award of attorney fees, grounding its claim exclusively on section 701.020, subdivision (c), of the Code of Civil Procedure.[29] The judgment awards Ilshin $1,439,203.08 for its attorney fees.

Buena Vista appeals from the attorney fee award, on grounds that (1) section 701.020 does not provide for a recovery of attorney fees; (2) even if section 701.020 does permit an attorney fee award for a defendant's noncompliance with a creditor's levy without good cause, in this case Buena Vista acted with good cause in denying its liability to Ilshin as a debtor to Last Patriot; and (3) the evidentiary basis for the award's amount was insufficient.

The question whether section 701.020 affords the trial court discretion to award attorney fees in this case raises a question of law, subject to review de novo. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175–1176 [39 Cal.Rptr.3d 788, 129 P.3d 1] [statutory interpretation raises question of law]; *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 159 [67

---

*See footnote, *ante*, page 612.

[29] All further code citations in this part of the opinion (I.C.) are to the Code of Civil Procedure unless otherwise specified.

Cal.Rptr.3d 228] [same].) We must "presume that the [trial] court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." (*Mejia v. City of Los Angeles, supra*, 156 Cal.App.4th at p. 158.)

We conclude that appellant has carried that burden. The trial court erred in determining that it had statutory authority to award attorney fees to Ilshin as judgment creditor in this case. For that reason (as well as due to the reversals to the judgment required with respect to other issues in this appeal) the fee award must be set aside.

    1.   *Last Patriot brought its suit against Buena Vista as an independent creditor's claim.*

■ Since the Legislature revised the law regarding enforcement of judgments in 1982, the provisions regarding creditor's suits appear in section 708.210 et seq. Section 708.210 provides that if a third person is indebted to the judgment debtor or possesses property in which the judgment debtor has an interest, "the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment."

Additional remedies supplement that right when certain circumstances are present. Specifically, section 708.120, regarding debtor's examinations, permits a judgment creditor to discover and specify property of the judgment debtor in the third person's possession, and to obtain an order, on motion, determining any claim of exemption asserted by the judgment debtor. (§ 708.120, subd. (d).) When the third person claims no interest in the property or debt, such a motion procedure may be all that is required in order for the judgment creditor to obtain satisfaction of its judgment in whole or in part.

Even when the third person claims an interest in the property that is claimed to be owed to the judgment debtor, the court in certain circumstances may still determine the judgment creditor's and the third person's respective interests without a separate creditor's suit—but only when no adjudication of competing claims is required. When the claims require a contested adjudication, the parties are entitled to have the issues determined in an independent creditor's action, rather than by the motion procedure under section 708.120, subdivision (d).

A creditor's suit, rather than the motion procedure, is required if the court finds that the third person's claim is made in good faith, and that at least one of the following three conditions exists: (1) that court is not a proper forum

for adjudication of the claim; (2) another action is pending with respect to the claim; or (3) the court believes the claim should be tried as an independent creditor's suit. (§ 708.180, subd. (b); *Evans v. Paye* (1995) 32 Cal.App.4th 265, 277, fn. 9 [37 Cal.Rptr.2d 915]; Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., (1998) preceding § 708.210, p. 578.)[30]

In this case Ilshin brought an independent creditor's suit against Buena Vista (either as a matter of choice or because § 708.180, subd. (b), required an independent action rather than a summary motion procedure). Ilshin's suit sought funds held by Buena Vista that it claimed were owed to Last Patriot due to Buena Vista's breach of the Agreement's consent clause and $900,000 limit on cost reimbursements. Its breach of contract claims alleged that Ilshin was an unsatisfied judgment creditor of Last Patriot; that "Buena Vista has possession or control of property in which [Last Patriot], a judgment debtor, has an interest"; and that "Ilshin, as a judgment creditor, is entitled to bring suit against Buena Vista to have the property turned over to the judgment creditor and applied towards the reduction of the debt." Its claim that Buena Vista breached the Agreement by ending the film's distribution after October 2005, was also brought as an independent creditor's suit by Ilshin, "standing in the shoes" of Last Patriot.

These allegations bring Ilshin's claim within section 708.210's provision for a creditor's suit against a third person—in this case, Buena Vista. The law does not authorize an award of attorney fees for such a suit, as we explain below.

### 2. *The law does not entitle Ilshin to an award of attorney fees for prevailing on its creditor's suit against Buena Vista.*

"[T]he 'American Rule' [is] that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 429 [76 L.Ed.2d 40, 103 S.Ct. 1933].) Attorney fees are not recoverable unless a fee award is expressly authorized by either statute or the parties' contract. (§ 1021; *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379 [30 Cal.Rptr.2d 536].)

---

[30] As the Law Revision Commission comment explains, while the "less expensive and less cumbersome enforcement procedures will be used in the normal case," independent creditor's suits "will be used . . . where the court does not determine disputed ownership of the property or the existence of the debt" under section 708.180, "or where for some other reason the judgment creditor believes that the third person will not cooperate." (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., *supra*, preceding § 708.210, at p. 578.) The history of the modifications to these procedures during the last century is set forth and explained in *Evans v. Paye*, *supra*, 32 Cal.App.4th at pages 275–280.

■ Ilshin points to section 701.020, subdivision (c), as the statutory authority for its fee award in this case. Subdivision (a) of section 701.020 provides that "[i]f a third person is required by this article to deliver property [pursuant to a judgment creditor's levy] and the third person fails or refuses without good cause to do so, the third person is liable to the judgment creditor for [the value of the property or the amount required to satisfy the judgment]." Subdivision (c) of section 701.020 gives discretion to "the court that determines the liability" to "require the third person to pay the costs and reasonable attorney's fees incurred by the judgment creditor in establishing the liability."

In June 2003, Ilshin served Buena Vista with a writ of execution in case No. BC214077, as a judgment creditor of Last Patriot and others in that case, and a notice of levy for almost $8 million. The levy sought "[a]ll accounts receivable for, or accounts payable to, or monies due to [Last Patriot], judgment debtors in the above-entitled action." Ilshin's counsel explained in a contemporaneous letter that it sought "any assets due to [Last Patriot]" in light of counsel's understanding that Last Patriot would be entitled to a distribution from Buena Vista "at the end of this month." Neither the levy nor the letter mentioned any claim against Buena Vista for distribution costs in excess of $900,000. In response to the levy, Buena Vista apparently turned over the distribution proceeds that were due to Last Patriot under its understanding of the Agreement, after satisfaction of claims interposed by Last Patriot's secured creditors. (§ 701.030, subd. (f)(1).)

Ilshin filed this suit in February 2006, as a judgment creditor of Last Patriot and others to whom Buena Vista allegedly owed funds as a result of its breach of obligations under the Agreement, as authorized by section 708.280, subdivision (b). (§ 708.210.) However, section 708.280 does not authorize an award of attorney fees to a successful claimant. Ilshin instead sought fees pursuant to section 701.020, subdivision (c), based on its success in obtaining judgment for distribution costs withheld by Buena Vista from its distributions to Last Patriot, and Buena Vista's failure to turn over those funds in response to the levy in case No. BC214077. However, section 701.020, subdivision (c), applies to procedures for enforcement of judgments by writs of execution. By its own terms, it does not provide for an award of attorney fees to a prevailing creditor in an independent creditor's suit. It therefore does not support the trial court's attorney fee award in this case.

Section 701.020 is within chapter 3 (entitled "Execution") of title 9 ("Enforcement of Judgments") of the code. Chapter 3 "governs enforcement of a money judgment by a writ of execution," unless otherwise specifically provided. (§ 699.010.) But Ilshin's suit resulting in the judgment against Buena Vista in this case did not seek the enforcement of a money judgment

by a writ of execution—the subject of chapter 3. Rather, it was an independent creditor's suit against Buena Vista, as a third person alleged to be holding funds to which Ilshin was entitled. The action was brought under section 708.210, not under section 701.020.

Section 708.210 is not within chapter 3 of title 9, the portion of the code to which the attorney fee provision in section 701.020, subdivision (c) applies, nor does it deal with the subject of chapter 3, writs of execution. Section 708.210 is within chapter 6 (entitled "Miscellaneous Creditors' Remedies") of title 9. And chapter 6 contains no provision affording discretion to award attorney fees in creditor's suits. No statute provides that section 701.020, subdivision (c), applies to creditor's suit under section 708.210.

According to Ilshin, under subdivision (c) of section 701.020, a court may order Buena Vista to pay Ilshin's attorney fees when its liability is established on the judgment creditor's claim, even in an independent creditor's action. This interpretation of section 701.020's scope is supported, Ilshin argues, by leading commentators on debt collection and enforcement of judgments, citing a note by Ahart and Michaelson that costs and attorney fees "may be recovered from the third person under [section] 701.020[, subdivision] (c)" under certain circumstances, even though costs incurred in prosecuting a creditor's suit cannot be charged against the judgment debtor as a cost of enforcing the judgment. (Ahart and Michaelson, Cal. Practice Guide: Enforcing Judgments & Debts (The Rutter Group 2009) ¶¶ 6:1406 to 6:1407, p. 6G-32 (rev. # 1, 2007).)

But Ilshin's reading of section 701.020's scope is not supported by the statutory language. Section 701.020 provides for a third person's liability to a judgment creditor if the third person "is required *by this article*" to deliver property to the levying officer, and refuses to do so without good cause. (§ 701.020, subd. (a), italics added.) Its reference in section 701.020, subdivision (c) to "the third person's liability" therefore does not encompass *any* possible liability for which the third party may later be found to be responsible, such as liability for breach of contract in an action brought under section 708.210. It is a reference to the liability specified in section 701.020, subdivision (a): the third person's liability for its failure to deliver property to the levying officer as "required by this article"—article 5 of chapter 3, dealing with duties and liabilities after levy, not article 3 of chapter 6, dealing with independent creditor's suits.[31]

---

[31] We do not doubt that Ahart and Michaelson correctly notes that costs and attorney fees may be available under section 701.020, subdivision (c); but this case was not brought under section 701.020, subdivision (c), and Ahart and Michaelson's note does not purport to be as sweeping as the proposition for which Ilshin relies on it. Ahart and Michaelson does not purport to say that section 701.020, subdivision (c) authorizes an award for attorney fees

Ilshin did not assert its claim that Buena Vista had breached its contractual obligations to Last Patriot in case No. BC214077—the case in which the writ of execution was issued, and the proper forum for any claim that Buena Vista's response to the levy was insufficient. (See §§ 708.160, subd. (a) [examination of third person in "court in which the money judgment is entered"], 708.180 [court that ordered third person's examination may determine parties' interests in property, unless third party disputes claim or debt in good faith].) And when it instead filed the suit involved here, it raised no issue as to Ilshin's rights under the levy, or under section 701.020. Its complaint did not allege that Ilshin had levied against Buena Vista, or that Buena Vista's response to the levy was insufficient, or lacking in good cause. The judgment in this case established Ilshin's right to recover damages for Buena Vista's breach of its contract with Last Patriot, but it did not purport to determine whether Buena Vista's compliance with any levy in case No. BC214077 was or was not satisfactory or done without good cause. Nothing in this action concerns the parties' rights or liabilities under section 701.020.[32]

■ Section 701.020 does not apply to independent creditor's suits. The trial court therefore lacked authority to determine whether fees could or should be awarded pursuant to section 701.020, subdivision (c), and to award attorney fees incurred by Ilshin to prosecute the suit against Buena Vista in this case. The attorney fee award must be set aside.[33]

## II.   *Ilshin's Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

incurred in an independent creditor's suit under section 708.210, merely because in a different lawsuit the plaintiff was earlier unsuccessful in enforcing the obligation by levy upon writ of execution.

[32] In the trial court Ilshin argued that subdivision (c) of section 701.020 means "that a party will not be liable <u>for the underlying debt</u>" if it had good cause for failing to pay "on the levy." But that is plainly not what the statute means. The failure of a levy on writ of execution to provide relief against a third party does not necessarily immunize the third party from liability for the claim. The third person may nevertheless be found to be liable for the underlying debt, even if its failure to honor the levy was fully justified—for example by independent creditor's suit when the third person asserts a claim to the property in good faith, or by motion in the same case when the court finds an absence of good faith along with one of the other specified circumstances. (§ 708.180.)

[33] Our determination that the fee award is not authorized by law makes it unnecessary to address Buena Vista's other contentions with respect to the attorney fee award.

*See footnote, *ante*, page 612.

## Disposition

*Damages for breach of contract*

The award of damages for breach of contract is reversed. The trial court is directed to determine and enter an amount for damages for breach of contract in favor of Ilshin in the amount of $3,775,197, adjusted as required by this opinion to delete from it the residuals paid by Buena Vista on Last Patriot's behalf, and to reflect any change in the total costs withheld by Buena Vista in excess of the $900,000 cost threshold resulting from a change in the time the $900,000 threshold was reached, along with prejudgment interest on the total.

The award of lost profits damages is reversed. The trial court is directed to determine and enter an amount for lost profits damages in favor of Ilshin in the amount of $452,163, adjusted as required by this opinion to reflect any change in the time the $900,000 cost threshold was reached.

*Attorney fees*

The award of attorney fees and costs is reversed.

*Statute of limitations*

The trial court's ruling on the applicable statute of limitations is affirmed.

*Conversion & punitive damages*

The orders striking the punitive damage claim, and refusing to enter judgment in Ilshin's favor on the conversion claim, are affirmed.

The parties are to bear their own costs on appeal.

Mallano, P. J., concurred.

**ROTHSCHILD, J.,** Concurring and Dissenting.—I concur in the majority opinion except as to part I.A. and B. of the Discussion, from which I respectfully dissent. In my view, the implied covenant of good faith and fair dealing prohibited Last Patriot Productions, Inc. (Last Patriot), from unreasonably withholding consent to distribution costs in excess of $900,000, and there is no reason why a court cannot determine whether it would have been unreasonable for Last Patriot to withhold consent to Buena Vista's distribution costs if Buena Vista had asked. Moreover, on this record it is undisputed that withholding consent would have been unreasonable—Buena Vista introduced evidence that its distribution costs were reasonable, Ilshin introduced no evidence to the contrary, and all parties agree that the ongoing distribution of the film was profitable. I further conclude that the implied covenant of

good faith and fair dealing prohibited Last Patriot from requiring Buena Vista to continue to distribute the film if Last Patriot refused to consent to additional distribution costs, so the lost profits award should be reversed as well.

On June 1, 2011, and on June 13, 2011, the opinion was modified to read as printed above. Petitions for a rehearing were denied June 13, 2011.