Filed 11/13/14  Vartelas v. Universal Enterprises Internat. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TAKIS VARTELAS, | D063246 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00089472-CU-EN-CTL) |
| UNIVERSAL ENTERPRISES INTERNATIONAL, INC., et al., | |
| Defendants and Respondents, | |
| SAMME LADCKIE, | |
| Defendant and Appellant. | |

APPEALS from judgments of the Superior Court of San Diego County, Lisa

Foster, Gonzalo P. Curiel, and Timothy B. Taylor, Judges.  Affirmed.

Del Mar Law Group and David P. Hall for Plaintiff and Appellant.

The Cabrera Firm and Guillermo Cabrera for Defendants and Respondents.

Allen Matkins Leck Gamble Mallory & Natsis and Charles Lewis Pernicka for

Defendant and Appellant.

Plaintiff Takis Vartelas appeals judgments in favor of defendants Universal Enterprises International, Inc. (Universal), Dublin Square Authentic Irish Pub & Grill LLC (Dublin Square), and Samme Ladckie. In separate orders sustaining defendants' demurrer, without leave to amend, and granting defendants' motion for summary judgment, the trial court found (1) Vartelas had not alleged sufficient facts to hold Universal and Dublin Square liable as "alter egos" for a judgment Vartelas previously obtained against Ladckie; (2) Vartelas had not sufficiently pled causes of action for fraudulent transfer and declaratory relief; and (3) Vartelas had not established a triable issue of fact on his claim that Dublin Square possessed unpaid wages or other monies due to Ladckie that could be recovered by Vartelas in a creditor's suit. In this appeal, Vartelas contends each of these findings was in error.

Ladckie filed a protective cross-appeal, arguing that the court should have granted his earlier motion to vacate Vartelas's underlying judgment and for judgment on the pleadings. Vartelas moved to dismiss Ladckie's cross-appeal as untimely, and we deferred decision on Vartelas's motion.

We conclude the trial court did not err in sustaining defendants' demurrer, without leave to amend, or in granting defendants' motion for summary judgment. We therefore affirm the judgments. In light of our disposition, Ladckie's cross-appeal and Vartelas's motion to dismiss are moot.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Vartelas sued Ladckie, Ladckie's ex-wife, and two corporate entities associated with Ladckie's car rental business in Nevada state court. Among other claims,

Vartelas alleged that he was wrongfully terminated from his employment with the defendants. Two years later, Vartelas obtained a default judgment after the defendants failed to appear for trial. At the time of the judgment, Ladckie was known as Sam Ladki. The next year, Ladckie legally changed his name from Sam A. Ladki to Samme Garren Ladckie. We will refer to him as Ladckie throughout this opinion for clarity.

While the Nevada lawsuit was pending, or shortly thereafter, Dublin Square was formed to operate an Irish pub in San Diego. Tax records show that Dublin Square is wholly owned by Universal. After the Nevada default judgment was entered, Dublin Square entered into an employment agreement with Ladckie, who agreed to act as Dublin Square's general manager. Dublin Square provided Ladckie an annual salary of $60,000, a bonus based on performance, and various benefits. The employment agreement was later amended and renewed several times. Clive Dakin, identified as a "member," signed Ladckie's employment agreements on Dublin Square's behalf.

Several days after the Nevada default judgment, and shortly before signing his employment agreement with Dublin Square, Ladckie filed for Chapter 7 bankruptcy protection. Ladckie represented that he was unemployed and had few assets. Although the bankruptcy proceedings were active after Ladckie's employment agreement with Dublin Square was signed, the bankruptcy docket does not show that he disclosed his new employment relationship. After objections from Ladckie's creditors, the federal court dismissed Ladckie's bankruptcy petition without discharge. Dublin Square also filed for bankruptcy protection. Ladckie signed Dublin Square's bankruptcy petition as

3

its manager. The federal court later confirmed Dublin Square's repayment plan and closed the bankruptcy case.

Pursuant to a 1992 judgment, Ladckie was required to pay $4,300 per month in spousal support to his ex-wife. This amount was later reduced to $2,500 per month. To fulfill his spousal support obligations, Ladckie directed Dublin Square to garnish his paychecks and withhold the required amounts. Ladckie prepared a draft earnings assignment order that, if entered by the court and served, would have legally required Dublin Square to garnish Ladckie's paychecks. There is no record, however, that that order was entered or served at the time. Dublin Square nonetheless began garnishing Ladckie's wages voluntarily. After several years of such garnishments, Ladckie obtained a valid earnings assignment order and served it on Dublin Square. However, during the period of voluntary garnishment (and for a time thereafter), Dublin Square did not pay any money garnished from Ladckie's paycheck's to Ladckie's ex-wife. Ladckie explained that Dublin Square garnished his wages but was unable to make the payments because it did not have the funds to do so. At the time, Dublin Square did not have enough money to meet its payroll expenses.

In 2008, following renewal of his judgment in Nevada, Vartelas applied for entry of the Nevada judgment in San Diego County Superior Court under Code of Civil Procedure section 1710.25. The court entered judgment against the Nevada defendants, including Ladckie. A year after that, Vartelas undertook a judgment debtor examination of Ladckie. Soon thereafter, Vartelas filed this action.

4

Ladckie again filed for bankruptcy protection, this time under Chapter 13. Vartelas moved to dismiss Ladckie's bankruptcy petition or, in the alternative, convert it to a proceeding under Chapter 7. Before Vartelas's motion was heard, Ladckie voluntarily dismissed his bankruptcy petition.

Following several rounds of pleading in this action, Vartelas filed his operative third amended complaint (TAC). The TAC alleged that Ladckie had formed a number of corporate entities, including Dublin Square and Universal, while Vartelas's earlier Nevada lawsuit had been pending. During this time, the TAC alleged, Ladckie developed a plan to conceal his assets, including his ownership interests in his businesses. As part of this plan, Ladckie and Dublin Square entered into the employment agreement classifying Ladckie as a "manager" and identifying a third person, Dakin, as Dublin Square's owner.

Despite the employment agreement, the TAC alleged, Ladckie had previously represented himself as the owner of Dublin Square and personally obligated himself for debts of Dublin Square. Ladckie allegedly received several hundred thousand dollars in "draw[s]" and personal expenses from Dublin Square. The TAC further alleged that Universal and Dublin Square failed to follow corporate formalities, that they were undercapitalized, and that they operated as a single enterprise with Ladckie's other businesses. The TAC also alleged that Universal had entered into a lease of a 1984 Ferrari, with the option to purchase it. Universal transferred the lease to Dublin Square, which eventually obtained ownership of the car.

5

On the basis of these allegations, Vartelas's TAC contained four causes of action. First, Vartelas sought to amend the underlying judgment against Ladckie, his ex-wife, and Ladckie's prior car rental businesses to include Dublin Square and Universal as judgment debtors. Vartelas requested that "Dublin [Square] and Universal be found to be part of the single enterprise of Ladckie and be added" to the underlying judgment. Second, Vartelas sought to maintain a creditor's suit under Code of Civil Procedure section 708.210 against Dublin Square. Vartelas alleged that Dublin Square "has possession and/or control of property in which Ladckie has some interest, including but not limited to earned but unpaid salary, vacation time and bonuses." Third, Vartelas alleged that the transfer of the Ferrari from Universal to Dublin Square was made with the intent to defraud creditors (including Vartelas) and should be set aside as a fraudulent transfer under Civil Code section 3439.07, subdivision (a)(1). Fourth, Vartelas requested declaratory relief regarding Ladckie's ownership interests in Dublin Square and Universal.

Dublin Square and Universal demurred to the first, third, and fourth causes of action in the TAC. Ladckie joined. Dublin Square and Universal argued that the TAC failed to allege facts sufficient to hold Dublin Square or Universal liable on the underlying judgment under an alter ego or single enterprise theory. Since Dublin Square and Universal were not liable to Vartelas, they argued, Vartelas's claims for fraudulent transfer and declaratory relief were likewise deficient. Dublin Square and Universal also noted that Vartelas's judgment had been improperly renewed in Nevada. After the Nevada judgment had been entered in California, the Nevada state court subsequently

6

voided its renewal.  (Earlier in the litigation, citing the Nevada court's order, Ladckie had filed a motion to vacate the California judgment and for judgment on the pleadings.  The court denied Ladckie's motion.)

The trial court sustained defendants' demurrer without leave to amend.  The three challenged causes of action were dismissed with prejudice.  Because the dismissal of these causes of action resulted in a complete resolution of Vartelas's claims against Universal, the court entered judgment in Universal's favor.

After further litigation, Dublin Square filed a motion for summary judgment on Vartelas's remaining cause of action, a creditor's suit seeking allegedly unpaid salary, vacation time, and bonuses.  Ladckie again joined.  Dublin Square argued that the applicable statute of limitations barred Ladckie (and thus Vartelas) from recovering any benefits allegedly owed prior to 2005.  As to later benefits, Dublin Square argued that it did not owe Ladckie anything.  In a sworn declaration, Ladckie confirmed that Dublin Square did not owe him any unpaid salary, bonuses, or unused vacation days.  In fact, Ladckie stated that he owed Dublin Square several hundred thousand dollars in debt, including approximately $150,000 in personal charges on his company account (later amended to $225,000) and at least $275,750 on an interest-bearing promissory note in favor of Dublin Square.  Even if it owed some unpaid salary or other benefits to Ladckie, Dublin Square argued those debts were far outweighed by Ladckie's debts to Dublin Square.  Vartelas opposed, arguing that benefits prior to 2005 were not barred by the statute of limitations, that bankruptcy and tax records raised triable issues of fact regarding the debts and payments claimed by Dublin Square, and that Dublin Square was

7

in possession of wages voluntarily withheld or garnished as spousal support for Ladckie's ex-wife (but not paid to her).

The trial court determined that no triable issue of fact existed and granted summary judgment. The court found that the statute of limitations barred recovery of any wages or other amounts due prior to 2005. The court was unpersuaded that wages voluntarily garnished by Dublin Square were recoverable because any claim by Ladckie's ex-wife to such sums had priority over Vartelas's claim in this creditor's suit. The court further concluded that "much of the evidence submitted in the opposition papers supports the notion that [Ladckie] owes Dublin Square money, not the other way around. The opposition papers fail to set forth a discrete amount allegedly owed by Dublin Square to [Ladckie], and the assertions that some amount is due are speculative." The court entered judgment in favor of Dublin Square and Ladckie. These appeals followed.

DISCUSSION

I

A

Vartelas first contends the trial court erred in granting defendants' demurrer without leave to amend. On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the "reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its

8

parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  We consider the sufficiency of Vartelas's operative complaint de novo.  (*First Aid Services of San Diego, Inc. v. California Employment Development Dept.* (2005) 133 Cal.App.4th 1470, 1476.)

However, "it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.)  Thus, "[w]hile the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)  We will address each of the relevant causes of action in turn.

B

Vartelas's first cause of action seeks to amend his judgment against Ladckie and the other Nevada defendants to include Dublin Square and Universal.  Vartelas maintains that such an amendment is proper under a "single enterprise" theory, which is a form of alter ego liability.

Traditional alter ego liability reaches beyond the corporate form (or "pierc[es] the corporate veil") to hold an individual corporate shareholder or owner liable for the corporation's debts.  (*Postal Instant Press*, *Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1522 (*Postal Instant*).)  "Traditional piercing of the corporate veil is justified as an equitable remedy when the shareholders have abused the corporate form to evade individual liability, circumvent a statute, or accomplish a wrongful purpose." (*Ibid.*) " 'There is no litmus test to determine when the corporate veil will be pierced; rather the

9

result will depend on the circumstances of each particular case.  There are, nevertheless, two general requirements:  "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." ' " (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 511.)

However, alter ego liability does not work in reverse.  "The same abuse of the corporate form does not exist when the judgment debtor is the shareholder.  In that situation, the corporate form is not being used to evade a shareholder's personal liability, because the shareholder did not incur the debt through the corporate guise and misuse that guise to escape personal liability for the debt." (*Postal Instant*, *supra*, 162 Cal.App.4th at p. 1522.)  California courts have therefore rejected such "reverse" piercing and prevented creditors from holding corporations liable for the debts of shareholders and owners.  (See *id.* at p. 1519; see also *Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1193.)

Under the theory of "single enterprise" liability, a corporation may be held liable for the debts of its affiliate corporations under certain circumstances:  "Alter ego liability is not limited to the parent-subsidiary corporate relationship; rather, 'under the single-enterprise rule, liability can [also] be imposed between sister [or affiliated] companies.' [Citation.]  Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other."  (*Troyk v.*

10

*Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1342.) " ' "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." ' " (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249-1250 (*Las Palmas*).)

"Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution. [Citation.] Nevertheless, it would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity." (*Las Palmas*, *supra*, 235 Cal.App.3d at p. 1249.) Thus, "even if all the formal elements necessary to establish alter ego liability are not present, an unnamed party may be included as a judgment debtor if 'the equities overwhelmingly favor' the amendment and it is necessary to prevent an injustice." (*Carolina Casualty Insurance Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1188-1189.)

Vartelas argues that he has pled sufficient facts to hold Dublin Square and Universal liable as part of a single enterprise with Ladckie and the car rental businesses named in the underlying judgment. Vartelas alleges that Ladckie formed Dublin Square with the intent to conceal assets, that Dublin Square is undercapitalized, that Ladckie is the true owner of Dublin Square and draws substantial sums from its operation, that

11

Dublin Square does not follow certain corporate formalities including holding required meetings, and that Ladckie failed to file appropriate documentation for Universal and other entities with the relevant government officials.

These allegations are insufficient to establish Dublin Square's or Universal's liability under a "single enterprise" theory. Vartelas does not sufficiently allege facts regarding the relationship of the ownership, assets, and activities of Ladckie's car rental businesses (which appear to be long defunct), on one hand, and Dublin Square and Universal, on the other. (See *Troyk v. Farmers Group, Inc.*, *supra*, 171 Cal.App.4th at p. 1342.) Vartelas does not allege any facts that would show that all of these businesses operated as part of a single enterprise, such that any debts by Ladckie's car rental businesses should be applied to Dublin Square and Universal. (See *Las Palmas*, *supra*, 235 Cal.App.3d at pp. 1249-1250.) Instead, Vartelas's allegations focus on Ladckie's relationship to Dublin Square and Universal, which are insufficient.

Although Vartelas disclaims any effort to hold Dublin Square and Universal directly liable for Ladckie's debts under a "reverse piercing" theory, his allegations show that Dublin Square's and Universal's liability, if any, would have to be predicated thereon. Because California has rejected such "reverse piercing" liability (see *Postal Instant*, *supra*, 162 Cal.App.4th at p. 1519), and Vartelas has not alleged sufficient facts to establish liability based on a "single enterprise" theory, his allegations do not state a cause of action to amend the underlying judgment to add Dublin Square and Universal. The trial court did not err in sustaining defendants' demurrer to this cause of action.

12

Vartelas's reliance on *Kohn v. Kohn* (1950) 95 Cal.App.2d 708 is unpersuasive. In that case, the plaintiff's former husband formed a corporation to hold two income-bearing parcels of land after the plaintiff, his former wife, made demands for an accounting of his income from those parcels. (*Id.* at p. 717.) The former husband held a one-half interest in the corporation and admitted that the corporation was formed to shield income from the plaintiff. (*Ibid.*) Relying on the alter ego doctrine, the court held that one-half of the corporation's income should be imputed to the husband for purposes of calculating his alimony payments to the plaintiff. (*Id.* at pp. 719-720.) The court limited its holding to the calculation of the former husband's alimony; it did not hold the corporation directly liable for the debts of the former husband, its shareholder. (*Ibid.*) *Kohn* therefore has no application here.

We also find no abuse of discretion in the trial court's decision to sustain defendants' demurrer without leave to amend. Vartelas contends that he could add additional allegations of undercapitalization, personal obligations for corporate debts, failure to hold meetings, and failure to file corporate documentation. However, even with these additional allegations, Vartelas still could not state a viable cause of action. The additional allegations again focus on Ladckie's relationship to Dublin Square and Universal, rather than their existence as a single enterprise with Ladckie's other businesses. Because Vartelas has not shown a reasonable possibility that the defects in this cause of action may be cured by his proposed amendment, leave to amend was properly denied. (See *Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.)

13

## C

Vartelas's next cause of action is for fraudulent transfer. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." (Civ. Code, § 3439.04, subd. (a).) For purposes of the statute, a "debtor" is "a person who is liable on a claim." (*Id.* § 3439.01, subd. (e).) A "creditor" is "a person who has a claim . . . of a debtor." (*Id.* § 3439.01, subd. (c).)

Vartelas alleges that Universal fraudulently transferred its interest in a 1984 Ferrari to Dublin Square. Vartelas's allegations rely on Universal being considered a "debtor" of Vartelas for purposes of the statute. However, because we have rejected the basis for Universal's liability pled in the complaint, Vartelas's fraudulent transfer cause of action fails as well. Vartelas does not identify any other basis for considering Universal a debtor of Vartelas, and he does not suggest that leave to amend should have been granted. The trial court therefore properly sustained defendants' demurrer to this cause of action, without leave to amend.

## D

Vartelas's final cause of action subject to defendants' demurrer seeks declaratory relief. The relevant statute provides: "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or

14

cross-complaint in the superior court for a declaration of his or her rights and duties . . . ." (Code Civ. Proc., § 1060.)

" ' "The purpose of a declaratory judgment is to 'serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.' " [Citation.] "Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation [citation]." [Citation.]' [Citation.] ' "One test of the right to institute proceedings for declaratory judgment is the necessity of present adjudication as a guide for plaintiff's future conduct in order to preserve his legal rights." ' [Citation.]" (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.) "Declaratory relief generally operates prospectively to declare future rights, rather than to redress past wrongs. [Citations.] It serves to set controversies to rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs. In short, the remedy is to be used in the interests of preventative justice, to declare rights rather than execute them." (*Jolley v. Chase Home Finance*, *LLC* (2013) 213 Cal.App.4th 872, 909.)

"[A] complaint for declaratory relief is sufficient if it alleges facts demonstrating the existence of an actual controversy between the parties about their legal rights and duties and requests adjudication of the controversy." (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 29; see *Graham v. Bank of America*, *N.A.* (2014) 226 Cal.App.4th 594, 615.) "Whether a claim presents an 'actual controversy' within the meaning of [the statute] is a question of law that we review de novo." (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.)

15

Vartelas alleges that "[a] dispute has arisen between Vartelas, on one hand, and Dublin [Square], Universal and Ladckie, on the other hand, concerning the ownership of the Dublin [Square] and Universal. Vartelas seeks a declaration of rights that Ladckie is a member of Dublin [Square] and shareholder of Universal." Vartelas argues that these allegations establish an actual controversy because Vartelas has the ability to execute his judgment against any ownership interests that Ladckie may have in Dublin Square and Universal. We disagree. As discussed in part I.B. *ante*, Vartelas may not hold Dublin Square and Universal directly liable for his judgment against Ladckie. As such, Vartelas's allegations show only a factual dispute about Ladckie's alleged assets, which is not the type of controversy that may be resolved through a declaratory relief action.

In order to state a claim for declaratory relief, Vartelas's allegations must establish a dispute as to the "legal rights and duties" of the opposing parties in the lawsuit. (See *Longshore v. County of Ventura*, *supra*, 25 Cal.3d at p. 29; see also Code Civ. Proc., § 1060.) "Before a controversy is ripe for adjudication it ' "must be definite and concrete, touching the legal relations of the parties having adverse legal interests." ' " (*Alameda County Land Use Association v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722.) The declaration sought by Vartelas would not establish Vartelas's *legal* rights or relations with respect to Ladckie, Universal, or Dublin Square. Vartelas's ability to legally execute on any assets owned by Ladckie, for example, would be unaffected by the requested declaration. The declaration sought by Vartelas would address merely the existence of any such assets.

16

Unlike the authorities cited by Vartelas, his allegations do not establish a dispute over the respective legal rights and obligations of parties to a contract or insurance policy (see *Osseous Technologies of America*, *Inc. v. Discovery Ortho Partners LLC* (2010) 191 Cal.App.4th 357, 365; *Ludgate Insurance Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 603; but see *Meyer v. Sprint Spectrum L.P.*, *supra*, 45 Cal.4th at p. 646) or a dispute over the validity of a city ordinance or administrative agency policy (see *Qualified Patients Association v. City of Anaheim* (2010) 187 Cal.App.4th 734, 753; *Californians for Native Salmon & Steelhead Association v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1429). At most, as we have explained, Vartelas's allegations establish a factual dispute regarding the extent of Ladckie's assets. The trial court thus properly sustained defendants' demurrer to this cause of action as well. And, in the absence of any argument that Vartelas could cure the deficiencies in this cause of action by amendment, leave to amend was properly denied.

II

A

Vartelas further contends that the trial court erred in granting defendants' summary judgment motion on his remaining cause of action, a creditor's suit against Dublin Square. "A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.] When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a

17

preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*).)

" 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

"We review the record and the determination of the trial court de novo." (*Kahn*, *supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) "Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff['s] brief. [Citations.] Issues not raised in an appellant's brief

18

are deemed waived or abandoned." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

Code of Civil Procedure section 708.210 establishes the basis for Vartelas's creditor's suit: "If a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment." Here, Vartelas alleged in his TAC that Dublin Square "has possession and/or control of property in which Ladckie has some interest, including but not limited to earned but unpaid salary, vacation time and bonuses." As we will explain, we conclude that the court did not err in granting summary judgment on this cause of action.

B

Vartelas first contends that the trial court erred in finding that the statute of limitations barred recovery of benefits due to Ladckie under his employment agreement prior to 2005. The statute of limitations for Vartelas's creditor's suit is governed by Code of Civil Procedure section 708.230. That statute establishes that a creditor's suit "shall be commenced . . . before the expiration of the later of the following times: [¶] (1) The time when the judgment debtor may bring an action against the third person concerning the property or debt. [¶] (2) One year after creation of a lien on the property or debt pursuant to this title if the lien is created at the time when the judgment debtor may bring an action against the third person concerning the property or debt." (Code Civ. Proc., § 708.230, subd. (a).) Vartelas does not contend that he obtained a lien on any property

19

or debt, so subdivision (a)(2) of the statute is inapplicable. Subdivision (a)(1) therefore governs this issue.

Code of Civil Procedure section 708.230, subdivision (a)(1), provides that a creditor's suit must be commenced within the statute of limitations governing the judgment debtor's action against the third person. In effect, this provision borrows the statute of limitations that governs the underlying claim the judgment debtor would have against the third person. (See Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2014) ¶¶ 6:1398-6:1399.) Because the statute of limitations for breach of Ladckie's written employment agreement is four years (see Code Civ. Proc., § 337), Vartelas is barred from recovering any amounts due under Ladckie's agreement more than four years prior to the date Vartelas filed suit.

Vartelas contends that the statute's use of the term "judgment debtor" means that the underlying statute of limitations cannot begin to run until judgment is entered. (See Code Civ. Proc., § 708.230, subd. (a)(1).) In Vartelas's view, Ladckie could not have become a "judgment debtor" until judgment is entered, so the statute could not have begun to run until Vartelas obtained his California judgment against Ladckie. We disagree. The statute uses the phrase "judgment debtor" descriptively. The statute of limitations on Ladckie's underlying claim began to run when it accrues as to him, whether or not he had attained the status of a "judgment debtor" at that time. A creditor like Vartelas is bound by the same time limitation. (*Ibid.*) This principle flows logically from the nature of the creditor's suit itself, in which the creditor stands in the shoes of the judgment debtor in his claim against the third person. (See *Ilshin Investment Co.*, *Ltd. v.*

20

*Buena Vista Home Entertainment, Inc.* (2011) 195 Cal.App.4th 612, 627.) The legislative history cited by Vartelas does not support a contrary interpretation.

Unlike the wrongful death cause of action at issue in *Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 80, cited by Vartelas, a creditor's suit is not a fully independent cause of action with its own statute of limitations. Instead, a creditor's suit is expressly limited to the statute applicable to the judgment debtor's underlying claim against the third person. (Code Civ. Proc., § 708.230, subd. (a)(1).) Contrary to Vartelas's contention, such a result is not inequitable. Vartelas, as Ladckie's creditor, is able to recover any amounts that Ladckie himself would be able to recover at the time Vartelas filed his creditor's suit. To hold otherwise would subject third persons to an extended period of suit through no fault of their own. Vartelas's analogy to the Uniform Fraudulent Transfer Act is unpersuasive given its differing statutory language, context, and history. (Cf. *Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 929.)

We therefore conclude that the trial court properly interpreted the statute of limitations applicable to Vartelas's creditor's suit. Any amounts due to Ladckie under his employment agreement with Dublin Square prior to May 11, 2005, i.e., four years before Vartelas brought his creditor's suit, are not recoverable by Vartelas in this action. (See Code Civ. Proc., §§ 337, 708.230, subd. (a)(1).)

C

Because we have determined that the statute of limitations bars Vartelas's recovery of any pre-May 2005 wages, we need not further consider Vartelas's contentions regarding such wages. However, even if his suit is limited by the statute of limitations,

21

Vartelas argues that the court erred in determining that no triable issues of fact exist on Ladckie's entitlement to certain post-May 2005 wages.  He raises the following issues: (1) whether Dublin Square paid Ladckie his wages for the remainder of 2005 and (2) whether Vartelas may recover amounts that Ladckie directed Dublin Square to withhold or garnish from his wages as spousal support for Ladckie's ex-wife (but which Dublin Square did not pay to her).

1

Dublin Square offered a sworn declaration from Ladckie that "[t]here is no unpaid portion" of Ladckie's salary currently due to him.  This evidence was sufficient to shift the burden of production to Vartelas to produce admissible evidence creating a triable issue of fact.  (See *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  In response, Vartelas submitted a 2005 form W-2 showing that Ladckie had been fully paid for that year.  This evidence corroborated Ladckie's declaration and did not create a triable issue of fact.  Vartelas also submitted Dublin Square's 2005 tax return.  This return listed no compensation under the line item "Compensation of officers" but showed approximately $515,000 in "Salaries and wages."  Vartelas claims that Dublin Square's return shows that it did not pay Ladckie any salary because later Dublin Square tax returns listed Ladckie's salary under the "Compensation of officers" line item.  Dublin Square counters that Ladckie's wages were included in the "Salaries and wages" line item for that year

Even viewing Vartelas's evidence liberally, as we must, we cannot conclude that Vartelas has adequately raised a triable issue of fact as to Ladckie's 2005 wages.  "A party cannot avoid summary judgment based on mere speculation and conjecture

22

[citation], but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524.) The technical inconsistencies noted by Vartelas in Dublin Square's tax returns show no more than the possibility, based on speculation, that Ladckie was not paid in 2005. Such evidence is insufficient to carry Vartelas's burden of production to show a triable issue of material fact on this issue. (See *ibid.*; see also *Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 166 [triable issue of fact cannot be created by speculation, conjecture, conclusory assertions or mere possibilities].)

2

In response to Dublin Square's evidence that Ladckie had been fully paid, Vartelas raises another issue: whether Ladckie (and thus Vartelas) can recover wages withheld by Dublin Square for spousal support but not paid to Ladckie's ex-wife. Vartelas acknowledges that he has no claim to wages garnished after Ladckie served Dublin Square with a valid spousal support earnings assignment order. (See Fam. Code, §§ 5241-5243.) However, Vartelas argues that any wages voluntarily garnished or withheld before service of that order, and not paid to Ladckie's ex-wife, are "property in which [Ladckie] has an interest" pursuant to Code of Civil Procedure section 708.210.

Vartelas relies on the general proposition that " '[e]arned but unpaid salary or wages are vested property rights.' " (*Reyes v. Van Elk, Ltd.* (2007) 148 Cal.App.4th 604, 612; see *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1401.) However, the wages here are not "unpaid" in the typical sense. Ladckie's W-2 forms and check stubs from the period show that he was fully paid. Dublin Square did not refuse to pay

23

Ladckie's wages. Instead, Ladckie gave back some of those wages (in the form of voluntary garnishment or withholding) and directed Dublin Square to pay those wages to his ex-wife. Ladckie thus relinquished his interest in the garnished wages. In his declaration, Ladckie confirms that he is not owed any salary from Dublin Square.

Although Dublin Square was not obligated to garnish any amounts pursuant to the Family Code because it had not been served with a valid assignment order, Dublin Square made the garnishments and agreed to pay them to Ladckie's ex-wife. Dublin Square's subsequent failure to make payments may give rise to a cause of action, but Vartelas has not shown that Ladckie retains a property interest in the garnished wages that can be recovered through Vartelas's creditor's suit. (See Code Civ. Proc., § 708.210.) Dublin Square holds the garnished wages for payment to Ladckie's ex-wife. Ladckie (and his creditors) no longer have an interest in them. The voluntary withholding or garnishment alleged by Vartelas is thus insufficient to create a triable issue of fact on Vartelas's creditor's suit.

Because Vartelas has not created a triable issue of fact as to his ability to recover property from Dublin Square in which Ladckie allegedly has an interest, we need not consider the parties' additional arguments regarding (1) the scope of Vartelas's allegations in the TAC and (2) any potential offsets resulting from Ladckie's alleged indebtedness to Dublin Square.

### III

In his cross-appeal, Ladckie contends that the court erred in denying his motion to vacate the underlying California judgment and for judgment on the pleadings. Vartelas

24

filed a motion to dismiss Ladckie's cross-appeal as untimely. Because we have concluded that the trial court did not err in granting defendants' demurrer or their motion for summary judgment, we affirm the judgment in Ladckie's favor. As such, we will dismiss Ladckie's cross-appeal as moot. (See *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 510, 546 [dismissing protective cross-appeal as moot upon affirmance of opposing party's appeal].) Vartelas's motion to dismiss Ladckie's cross-appeal is therefore moot as well, and we deny it on that basis.

DISPOSITION

The judgments are affirmed. Ladckie's cross-appeal is dismissed as moot. Vartelas's motion to dismiss Ladckie's cross-appeal is denied as moot. Universal, Dublin Square, and Ladckie are entitled to costs on appeal.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.