Filed 2/19/20

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| WANKE, INDUSTRIAL, COMMERCIAL, RESIDENTIAL, INC., <br><br>  Plaintiff and Respondent, <br><br> v. <br><br> AV BUILDER CORP., <br><br>  Defendant and Appellant. | D074392 <br><br><br> (Super. Ct. <br> No. 37-2016-00023774-CU-EN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Greco Traficante Schulz & Brick and Peter J. Schulz, and Williams Iagmin and Jon R. Williams for Defendant and Appellant.

Lindborg & Mazor, Peter F. Lindborg and Irina J. Mazor for Plaintiff and Respondent.

---

*      Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of the discussion section, part 4.

Wanke, Industrial, Commercial, Residential, Inc. (Wanke) obtained a judgment against Scott Keck and WP Solutions, Inc. (WP Solutions). To collect, Wanke filed a creditor's suit against third party AV Builder Corp. (AVB) to recover $109,327 that AVB owed WP Solutions in relation to five construction subcontracts. Following a bench trial, the court entered judgment in Wanke's favor for $83,418.94 after largely rejecting AVB's setoff claims.

Invoking assignment principles, AVB contends that Wanke lacked the ability to sue given judgment debtor WP Solutions's corporate suspension. Next, it claims Wanke's suit was untimely under section 708.230 of the Code of Civil Procedure.[1] Finally, it challenges the court's denial of its request for warranty setoffs under section 431.70. Rejecting each of these contentions, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Wanke is a company that installs waterproofing systems. It sued Keck and another of its former employees in 2008 for trade secret misappropriation after they left Wanke to form a competing business, WP Solutions.[2] The parties entered into a stipulated settlement and later litigated Keck's alleged breach of that settlement agreement. (See *Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1156−1162.) In 2013, the court entered judgment in favor of Wanke, holding Keck and WP Solutions jointly and severally liable for $1,190,929.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Keck later bought out his partner and became the sole owner.

Meanwhile, general contractor AVB had hired WP Solutions as a waterproofing subcontractor on five residential and commercial construction projects.3 Keck completed his work around June 2014 when, facing the sizable judgment, he declared bankruptcy and dissolved WP Solutions. Wanke served a writ of execution and notice of levy on AVB that month. In examination proceedings of AVB's president, Wanke learned that AVB owed WP Solutions $109,327 under the subcontracts. Wanke filed this creditor's suit in July 2016 seeking to recover that amount toward its outstanding judgment.

The case proceeded to a two-day bench trial in June 2018. The parties stipulated as follows: Wanke obtained a judgment of $1,190,929 against WP Solutions and Keck; Keck discharged his debts in bankruptcy; and after serving a notice of levy on third-party AVB, Wanke learned that AVB owed $109,327 to WP Solutions. The sole issues presented to the court were AVB's setoff claims (§ 431.70) and Wanke's ability to collect given WP Solutions' incapacity.

Wanke presented no affirmative evidence, resting on the stipulated facts. AVB presented four witnesses. Employee Robert Canup described the scope of his repairs at the Point Loma project, where Keck's waterproofing system failed due to his use of incompatible materials. Keck testified about warranty obligations built into the

---

3    WP Solutions entered into the following subcontract agreements with AVB: Point Loma Tennis Club (June 11, 2012), Oxford Court (December 23, 2013), 133 Promenade (April 25, 2013); Saratoga West (November 16, 2009); and the Taitz Residence (September 9, 2013). Four of the subcontracts concerned work for homeowners' associations, while the fifth was for a private residence.

subcontracts that WP Solutions could not perform after its 2014 suspension.[4]  As AVB was Keck's largest customer, Keck continued to honor warranty calls through his new company for minor repairs.

Antonio Madureira, AVB's president and founder, testified that any money AVB owed should be offset by the value of bargained-for warranty work that WP Solutions could no longer perform.  Although AVB had received warranty calls on each project, Madureira was unsure what repairs were needed or how much AVB had spent.  He did know that AVB spent $57,055.95 to repair damage from Keck's use of incompatible materials on the Point Loma project.

AVB's final witness was Jan Bagnall, a Pli-Dek representative.  By stipulation of the parties, the court read deposition excerpts indicating that damage at the Point Loma project was caused by an installation issue that would not have been covered under its manufacturer's warranty.

After AVB rested, Wanke presented one rebuttal witness.  Forensic architect Paul Kushner offered expert testimony on AVB's setoff claims.  As relevant here, Kushner concluded AVB's warranty setoff claims were inflated by an overestimation of the years remaining on each warranty.

The court entered judgment in Wanke's favor.  In a detailed statement of decision, it concluded AVB was entitled to offset moneys expended to repair the pool deck at Point

---

4        To avoid repetition, we discuss specific evidence pertaining to AVB's warranty setoff claim in the discussion.

4

Loma but otherwise rejected AVB's setoff claims. After offsetting the allowed amount, the court entered judgment in favor of Wanke and against AVB for $83,418.94.

DISCUSSION

AVB appeals the entry of judgment in Wanke's creditor's suit. We provide a brief outline of the legal framework before turning to the standing, statute of limitations, and setoff claims it raises on appeal.

1.      *Enforcement of Judgments Law*

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable. In 1982, following the recommendations of the California Law Revision Commission, the Enforcement of Judgments Law (EJL) was enacted. The EJL appears in sections 680.101 through 724.260 and is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric*, *Inc.* (1995) 33 Cal.App.4th 540, 546 (*Imperial Bank*).)

After entry of a money judgment, the judgment creditor may obtain a writ of execution requiring the levying officer to enforce the judgment. (§ 699.510, subd. (a); *Vinyard v. Sisson* (1990) 223 Cal.App.3d 931, 939.) If property subject to levy is in a third party's possession, the levying officer serves a copy of the writ of execution and notice of levy on that person, who may not refuse to comply absent a showing of good cause. (§§ 700.040, subd. (a), 701.010.) A third party's failure to deliver property without good cause renders it directly liable to the judgment creditor for the lesser of the judgment debtor's interest in the property or debt, and the amount required to satisfy the money judgment. (§ 701.020, subd. (a).) "[A] judgment creditor may enforce the

5

liability imposed by section 701.020 either pursuant to examination proceedings . . . or by way of a separate creditor's suit . . . ." (*National Financial Lending, LLC v. Superior Court* (2013) 222 Cal.App.4th 262, 271.)

Examination proceedings (§§ 708.110–708.205) "permit the judgment creditor to examine the judgment debtor, or third persons who have property of or are indebted to the judgment debtor, in order to discover property and apply it toward the satisfaction of the money judgment." (*Imperial Bank*, *supra*, 33 Cal.App.4th at pp. 546–547; see *Evans v. Paye* (1995) 32 Cal.App.4th 265, 280 (*Evans*).) Pursuant to section 708.120, a judgment creditor may "discover and specify property of the judgment debtor in the third person's possession, and [] obtain an order, on motion, determining any claim of exemption asserted by the judgment debtor." (*Ilshin Investment Co.*, *Ltd. v. Buena Vista Home Entertainment*, *Inc*. (2011) 195 Cal.App.4th 612, 626 (*Ilshin*).) "When the third person claims no interest in the property or debt, such a motion procedure may be all that is required in order for the judgment creditor to obtain satisfaction of its judgment in whole or in part." (*Ibid*.)

However, "[w]hen the claims require a contested adjudication, the parties are entitled to have the issues determined in an independent creditor's action, rather than by the motion procedure under section 708.120, subdivision (d)." (*Ilshin*, *supra*, 195 Cal.App.4th at p. 626.) Pursuant to section 708.210, "[i]f a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment." "This action

6

commonly is referred to as a creditor's suit." (*Evans*, *supra*, 32 Cal.App.4th at p. 276; see generally, §§ 708.210–708.290.) A creditor's suit may be filed in the first instance without resorting to other procedures. (See Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (2009 ed.) foll. § 708.210, p. 348.)

In this case, Wanke filed a notice of levy on AVB in June 2014. Thereafter it conducted examination proceedings and learned from AVB's president that AVB owed WP Solutions $109,327. Both the levy lien and examination lien expired. (§§ 697.710 [two-year lien from issuance of writ of execution], 708.120, subd. (c) [one-year lien from examination order].) In July 2016, Wanke filed a creditor's suit against AVB, seeking to recover $109,327. The trial court's judgment for Wanke and its denial of certain setoff claims form the basis for AVB's appeal.

2. *Standing and Capacity*

AVB argues Wanke lacks standing because it stands in the shoes of WP Solutions, a suspended corporation. Although AVB did not raise this argument below, a lack of standing is a jurisdictional defect and may be claimed for the first time on appeal. (*Common Cause of Calif. v. Board of Supervisors of Los Angeles County* (1989) 49 Cal.3d 432, 438.)

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (§ 367.) "A 'real party in interest' is generally defined as 'the person possessing the right sued upon by reason of the substantive law.' " (*Windham at Carmel Mountain Ranch Assn. v. Superior Court* (2003) 109 Cal.App.4th 1162, 1172.) In other words, it is the person " 'who has title to the cause of action, i.e.,

7

the one who has the right to maintain the cause of action.' " (*Ibid.*) Section 708.210 confers statutory standing on a "judgment creditor" to bring a creditor's suit against a "third person [who] has possession or control of property in which the judgment debtor has an interest or [who] is indebted to the judgment debtor." As the judgment creditor, Wanke has standing as the entity that "may bring" a creditor's suit.

Although framed as a lack of standing, AVB's claim instead goes to *capacity*. " 'A corporation that has had its powers suspended "lacks the legal capacity to prosecute or defend a civil action during its suspension." ' " (*Casiopea Bovet, LLC v. Chiang* (2017) 12 Cal.App.5th 656, 662 (*Casiopea*); see Rev. & Tax. Code, § 23301.) Such suspension "results in a lack of *capacity* to sue, not a lack of *standing* to sue." (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1603−1604.) Because WP Solutions was at all times a suspended corporation, it is undisputed that it lacked capacity to sue.

Citing the statutory requirement that a third person possess or control property "in which the judgment debtor has an interest" (§ 708.210), AVB argues Wanke's standing was *derivative* of WP Solution's interest. Upon WP Solutions' suspension, AVB maintains it no longer had the right to payment under its subcontracts. Invoking assignment principles, AVB argues that *Wanke* stood in WP Solutions' place and likewise could not maintain a creditor's suit against AVB.

AVB relies on two assignment cases in making this argument. In *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304 (*Cal-Western*), Pacific West One held a judgment against Corning Capital. The Franchise Tax Board suspended Pacific West One for failing to pay taxes. While suspended, Pacific

8

West One assigned its rights to Cal-Western. (*Id.* at p. 307.) Cal-Western sued to enforce the judgment. (*Ibid.*) The trial court struck the complaint, finding Cal-Western lacked capacity to sue as the assignee of a suspended corporation. (*Id*. at p. 308.) Affirming this ruling, the appellate court explained that as an assignee, Cal-Western's rights were derivative of Pacific West One's. (*Id.* at p. 312.)

In the second case, this court relied on *Cal-Western* in deciding whether an assignee of a suspended corporation could claim that corporation's escheated property under the Unclaimed Property Law. (*Casiopea*, *supra,* 12 Cal.App.5th 656.) The assignment was made pursuant to section 708.510, a separate procedure within the EJL that allows a judgment creditor to receive an involuntary assignment of a judgment debtor's interest. As we explained, although the assignment was an involuntary judicial assignment, it nevertheless followed the same assignment rules. (*Id.* at pp. 662−663.) As the assignee of a right belonging to a suspended corporation, Casiopea lacked capacity to sue to recover its judgment debtor's unclaimed property. (*Ibid.*)

AVB first presented this argument in its trial brief.[5] In rejecting it, the trial court explained:

> "Here, of course, there was no 'assignment' (either while WP Solutions was suspended, or at any other time). Beyond this

---

[5]    As Wanke argues "where the lack of capacity to sue does not appear on the face of the complaint, lack of capacity to sue must be raised in the answer or that objection is waived." (*V&P Trading Co. v. United Charter*, *LLC* (2012) 212 Cal.App.4th 126, 134.) But AVB's claim is not that *Wanke* lacks capacity to sue but rather that assignment principles prevent it from maintaining its suit. Such a claim is not forfeited by AVB's failure to raise incapacity in its answer. (See *id.* at p. 135 [no forfeiture although statute of limitations defense turned on plaintiff's alleged incapacity].)

chasmal factual distinction, it also strikes the court that disqualifying a judgment creditor on standing or capacity grounds because of an action taken solely by a judgment debtor (*i.e.*, failing to remain current with the FTB) would frustrate the legislative purpose behind [] section 708.210."

Wanke urges us to affirm, arguing against application of assignment principles in a creditor's suit. AVB responds that there is no practical difference—like section 708.510, which allows a judicial assignment under the EJL, the statutes pertaining to creditor's suits (§§ 708.210–708.290) are akin to an express assignment whereby the judgment creditor's rights should derive from the judgment debtor's.

These competing claims present a question of statutory interpretation, subject to independent review. (*Bruns v. E-Commerce Exchange*, *Inc.* (2011) 51 Cal.4th 717, 724.) At the outset, provisions applicable in one kind of enforcement mechanism under the EJL do not necessarily apply to others. (See *Ilshin*, *supra*, 195 Cal.App.4th at pp. 628–630 [no right to attorney's fees in creditor's suit, even though fees are recoverable from execution of a levy].) To evaluate whether assignment principles apply in the manner AVB suggests, we start with the language of the governing statutes, " 'giving it a plain and commonsense meaning.' " (*Bruns*, at p. 724.)

The statute at issue in *Casiopea* was section 708.510, subdivision (a), which authorizes a court on a noticed motion by the judgment creditor to order the judgment debtor to assign to it "all or part of a right to payment due or to become due." As *Casiopea* explained, a judicial assignment under this procedure was subject to general principles governing assignments codified in section 368. (*Casiopea*, *supra*, 12 Cal.App.5th at p. 664.) Pursuant to section 368, "[i]n the case of an assignment of a thing

10

in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment . . . ." The statute codifies the general rule that an assignee stands in the shoes of its assignor. (*Id.* at p. 663; *Cal-Western*, *supra*, 221 Cal.App.4th at pp. 310–311.) Because the judgment creditor in *Casiopea* was assigned the rights of a suspended corporation, it could not recover from the third person through the assignment. We expressly left open whether it "may have other avenues of relief through other provisions of the Enforcement of Judgments Law." (*Casiopea*, at p. 663.)

The creditor's suit statute is worded differently. "If a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment." (§ 708.210.) After resolving any exemption claims by the judgment debtor, the court renders judgment in the judgment creditor's favor if it establishes its claim against the third person. (§ 708.280, subds. (a)−(b).)[6]

By its plain language, the creditor's suit statute considers solely whether the judgment debtor has an "interest" in property held by the third person or is owed a debt by the third person. There is no requirement for the judgment debtor to have present *capacity* to collect against the third person. And because no assignment is created,

---

[6] The third person may claim a right to setoff (§ 431.70), as AVB did here.

11

section 368 is not triggered and any incapacity by the judgment debtor does not present a bar to the judgment creditor's recovery.

As the trial court suggested, this result makes sense. "The purpose of Revenue and Taxation Code section 23301 'is to "prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern" [citation], and to pressure it to pay its taxes [citation].' " (*Cal-Western*, *supra*, 221 Cal.App.4th at p. 310.) This goal is served by subjecting the assignee to the same incapacity defense as the assignor at the time of assignment. (*Id.* at p. 312.) Otherwise, "a suspended corporation simply could sell its claim to a third party without ever having to cure the default that caused the suspension," thereby circumventing tax law restrictions and removing the statutory incentive to make the corporation pay its delinquent taxes. (*Id.* at p. 314.) Requiring an assignee to ensure at the time of assignment that its assignor is not a suspended corporation is not unduly burdensome. (*Ibid.*) By contrast, these same motivations do not apply in a creditor's suit. Tax code restrictions serve as a penalty on the suspended corporation to incentivize payment of delinquent taxes. Foreclosing a creditor's suit against a third person based on unilateral action taken by a suspended judgment debtor would not further that goal.

In short, Wanke could bring a creditor's suit against third party AVB under section 708.210 even though judgment debtor WP Solutions was a suspended corporation that lacked capacity to sue AVB.

12

3.      *Statute of Limitations*

AVB argues next that Wanke's action is untimely.  A creditor's suit must be commenced before the *later* of the following:  "(1) The time when the judgment debtor may bring an action against the third person concerning the property or debt [¶] [and] (2) One year after creation of a lien on the property or debt pursuant to this title if the lien is created at the time when the judgment debtor may bring an action against the third person concerning the property or debt."  (§ 708.230, subd. (a).)  The levy and examination liens expired long before Wanke filed this creditor's suit.  (§ 708.230, subd. (a)(2).)  Accordingly, it is undisputed that Wanke's suit is timely only if it was filed within the time that WP Solutions "may bring an action" against AVB to recover the $109,327.  (§ 708.230, subd. (a)(1).)

In a creative argument first presented on appeal, AVB contends that the period in which WP Solutions "may bring an action" expired when its contractor's license was suspended in July 2014.  Thereafter, WP Solutions was statutorily precluded from pursuing a collection action against AVB.[7]  Because Wanke sued two years after that date, AVB maintains Wanke's action is time-barred.  Wanke makes several threshold arguments, which we address first before turning to the merits of AVB's claim.

First, Wanke contends AVB is precluded from raising a statute of limitations defense based on its statement in a prior brief that "WANKE has now timely filed suit."

---

7      Subject to certain limitations, Business & Professions Code section 7031, subdivision (a) prevents unlicensed contractors from pursuing a collection action for any work requiring a contractor's license.

13

But as AVB points out, the entire sentence reads, "WANKE has now timely filed suit to apply its Judgment Debtor's asset to its Judgment but it does so standing in the shoes of Judgment Debtor (WP Solutions)." This sentence is not wholly inconsistent with AVB's argument on appeal that the statute of limitations elapsed once WP Solutions lost capacity to sue. Moreover, the sentence pertained to an unrelated argument in AVB's motion to strike. It neither constitutes a judicial admission nor triggers judicial estoppel. (See *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187−188 [defining and applying both concepts].)

Next, Wanke asserts that AVB forfeited its defense by not specifically pleading section 708.230 in its answer. (See § 458; *Martin v. Van Bergen* (2012) 209 Cal.App.4th 84, 91; *Davenport v. Stratton* (1944) 24 Cal.2d 232, 246−247.) AVB responds that section 708.230 incorporates by implied reference code sections it did plead. We have not located a case addressing whether the failure to specifically plead a code section number is fatal to a statute of limitations defense when the omitted section refers to a different section that was specifically pleaded. Assuming AVB did properly plead a statute of limitations defense, Wanke suggests that it nevertheless forfeited it by failing to pursue it at trial. Ultimately, we need not decide whether AVB forfeited its defense based on its pleadings or presentation. Assuming the defense is preserved, AVB does not meet its burden to establish the merits.

The foundational premise of AVB's statute of limitations claim is flawed. AVB misconstrues the "may bring an action" language in section 708.230, subdivision (a)(1). The statute's language deals with the *accrual* of a judgment debtor's claim against a third

14

party, not whether the judgment debtor has present *capacity* to enforce that claim. (See, e.g., *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 323 ["Limitations statutes ordinarily establish the period in which an action must be *initiated* [citations], but the outcome of the claim or charges generally remains to be adjudicated"].) Reasonably construed, section 708.230, subdivision (a)(1) requires a creditor's suit to be brought within the time that the judgment debtor could have brought an action against the third party, without regard to factors like incapacity or licensure that would prevent it from bringing suit. The statute effectively borrows the statute of limitations governing a judgment debtor's underlying claim against a third party.[8]

WP Solutions could bring a collection action against AVB within four years of when AVB failed to meet its payment obligations under the waterproofing subcontracts. (§§ 337, subd. (a) [four-year limitations period for an "action upon any contract, obligation, or liability founded upon an instrument in writing"], 343 [four-year catchall period].) Thus, Wanke's suit is timely under section 708.230, subdivision (a)(1) if it was filed within four years of when WP Solutions' collection action accrued.

The problem for AVB is that the record does not establish as a matter of law when that occurred. Wanke argues the $109,327 due pertained solely to WP Solutions' work on two projects, Oxford Court and the Taitz residence. Indeed, Keck testified based on exhibit No. 13 that those were "the only project[s] where there's open money due." The

---

8      By analogy, section 335 provides: "The periods prescribed for the commencement of actions other than for the recovery of real property are as follows[.]" The various limitations periods that follow (§§ 335.1−343) do not depend on *whether* a party may commence an action.

15

subcontracts for both projects were signed in 2013, within four years of Wanke's 2016 creditor's suit. Payments were due once certain conditions were met. Even in the unlikely event that AVB owed WP Solutions the day those subcontracts were signed, Wanke claims its creditor's suit was timely under section 708.230, subdivision (a)(1).

AVB responds by challenging whether Wanke's action related solely to Oxford Court and the Taitz residence. But it cites no *evidence* that would permit us to find as a matter of law that Wanke sued more than four years after any actionable nonpayment by AVB. AVB does not identify which projects had payments due, how much was due per project, or when those obligations became overdue so as to trigger accrual of the statute of limitations.

As the party asserting a statute of limitations defense, AVB bore the burden of proving what portion of Wanke's claims were time-barred. (*Ladd v. Warner Bros. Entertainment*, *Inc.* (2010) 184 Cal.App.4th 1298, 1310; Evid. Code, § 500.) Even if we consider its statute of limitations argument first raised on appeal, AVB fails to meet its burden of proof. "Although [it] faults [Wanke] for not presenting evidence to establish what portion of damages may have been barred by [AVB's] statute of limitations . . . defense[], the burden of producing such defense evidence rested with [AVB], not with [Wanke]." (*Ladd*, at p. 1310.)

4.    *Warranty Setoffs*

We turn finally to AVB's argument that the trial court applied the wrong legal standard and overlooked undisputed evidence in denying its warranty setoff claim. As

16

we explain, the court gave several independent reasons for its ruling. We affirm based on one of those stated reasons—AVB's failure to establish the *value* of those setoffs.

a. *Legal Principles*

"The right to offset is a long-established principle of equity." (*Carmel Valley Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521, 550; see *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352, 363.) As early as the 17th century, English chancery courts permitted a defense of setoff "founded on the equitable principle that 'either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference.' " (*Granberry v. Islay Inv*. (1995) 9 Cal.4th 738, 743–744; *Jess v. Herrmann* (1979) 26 Cal.3d 131, 142 (*Jess*).) Codifying this principle, section 431.70 provides, in part:

> "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations."

Traditional setoff rules "operate as an accounting mechanism to avoid a payment and repayment from one party to another," "simply eliminat[ing] a superfluous exchange of money between the parties." (*Jess*, *supra*, 26 Cal.3d at pp. 134, 137.) Section 431.70 "permits a defendant in a civil action to assert a claim for relief in its answer and allege, in effect, that the defense claim constituted prior payment for the plaintiff's claim and therefore should be set off against any award in the plaintiff's favor." (*Construction*

17

*Protective Services*, *Inc. v. TIG Specialty Ins. Co*. (2002) 29 Cal.4th 189, 192.)  "[R]elief by way of a section 431.70 setoff is limited to defeating the plaintiff's claim." (*Id.* at p. 195.)  "[A] defendant may not obtain an award of affirmative relief against a plaintiff by way of section 431.70" and may instead "only assert the setoff defensively to defeat the plaintiff's claim in whole or in part." (*Id*. at p. 198.)

Section 431.70 requires "cross-demands for money."  Mutuality is key—the demands must exist "between the same parties in the same right." (*Harrison v. Adams* (1942) 20 Cal.2d 646, 649–650.)  Although the statute refers to demands "for money," such demands need not be liquidated.  (See Legis. Com., com. 14C West's Ann. Code Civ. Proc. (2009 ed.) foll. § 431.70, p. 226 ["It is not necessary under Section 431.70, as it was not necessary under [former] Section 440, that the cross-demands be liquidated."], citing *Hauger v. Gates* (1954) 42 Cal.2d 752, 755 ["[Former] [s]ection 440 does not require that the cross-demands be liquidated."].)  Likewise, the fact that a demand has not been reduced to judgment is not an obstacle to setoff.  (*Harrison*, at p. 649.)

From these authorities we derive a general rule.  A setoff may be applied pursuant to section 431.70 between parties who owed each other mutual debts or credits at a time when neither claim was time-barred.  By reducing or eliminating a defendant's obligation, setoff serves as an "innocuous accounting mechanism" to eliminate a superfluous exchange between the parties.  (*Jess*, *supra*, 26 Cal.3d at pp. 137−138.)

b.      *Additional Background*

AVB sought a total setoff of $179,230 against the amount it owed WP Solutions.  This amount was allegedly attributable the lost value of warranty work ($43,929), a resin

18

layer not installed at two project sites ($78,246), and necessary pool deck repairs at the

Point Loma site ($57,055). The trial court accepted a smaller setoff of $25,908 for pool

deck repair at Point Loma but otherwise rejected AVB's setoff claims. AVB challenges

only the denial of its warranty setoff on appeal, so we limit our summary to that claim.

Each of WP Solutions' subcontracts required it to perform ongoing warranty

repairs for a given number of years after it received final payment. As Keck explained at

trial, WP Solutions built the warranty obligation into its bid price for each subcontract.

The warranties covered miscellaneous repairs of cracks, nicks, or chips of coating, as

well as inspections and water tests. Once WP Solutions went insolvent in 2014, it could

no longer do warranty work. AVB argues it was entitled to withhold funds necessary to

cover anticipated warranty work from that point forward.

In its trial brief, AVB valued the warranty setoffs at five to seven cents per square

foot multiplied by the square footage for each project and the number of years remaining

on each warranty.[9] As AVB's president Madureira would testify at trial, those per-

square-foot cost benchmarks derived from Keck's estimates in 2014, when AVB received

Wanke's notice of levy and investigated possible setoff claims. However, Keck offered a

different benchmark at trial, upwards of 12 cents per square foot. Wanke's rebuttal expert

_____

[9]     AVB used a five-cents-per-square-foot benchmark for Oxford Court, and a seven-cents benchmark for each of the remaining four projects.

19

Paul Kushner did not challenge the per-square-foot benchmarks but testified that AVB had overestimated the years remaining under each warranty.[10]

The trial court rejected AVB's warranty setoff claim on multiple grounds. First, it determined that AVB did not carry its burden to establish the *value* of the warranty setoffs. It rejected the simplistic calculation based on the square footage and years because: (1) it lacked confidence in Keck's testimony providing the basis for his five to seven cents benchmark, and (2) Wanke's rebuttal expert revealed errors in the years estimated under each warranty. The court faulted AVB for failing to do an actuarial analysis of the warranty claims or discount the claimed amounts to their net present value. Moreover, it agreed with Kushner that as to one property, any warranty obligation had expired when WP Solutions went insolvent.

In articulating other grounds, the trial court stated the warranty setoffs were "unmatured, inchoate, speculative and contingent" and failed for lack of mutuality. As a factual matter, the court believed any warranty claims were unlikely to arise in practice because Keck was addressing calls through his successor company.

c.      *Analysis*

AVB takes issue with the court's finding that the claimed setoffs "were unmatured, inchoate, speculative and contingent." It argues the court applied the wrong standard in

---

10    Kushner explained that depending on the project, even 12 cents per square foot could be reasonable. For purpose of analysis, Kushner further assumed that AVB had complied with maintenance requirements under the warranties, though only one project had such documentation. Nevertheless, because there were fewer years left on each warranty than alleged in AVB's trial brief, Kushner believed the warranty setoff claims were overstated.

requiring the value of warranty work to be liquidated and certain. AVB also claims the court erred in rejecting undisputed evidence estimating the value of those warranties at seven cents per square foot.

Even if AVB is correct that the court applied the wrong standard in articulating one stated ground, any error does not affect the court's independent factual basis for rejecting AVB's warranty setoff claim—i.e., that AVB did not carry its burden to prove the *value* of those setoffs. AVB offered conflicting valuation evidence. At trial, Keck based his estimates off a benchmark of 12 cents per square foot. But AVB's president relied on Keck's earlier benchmark of five to seven cents per square foot. Wanke's rebuttal expert applied the five-to-seven-cents benchmark solely for purposes of analysis to highlight a separate calculation error.

Ultimately, the trial court did not find any of Keck's benchmarks credible, citing "the lack of confidence the court had in Mr. Keck's testimony generally, and specifically the testimony which provided the basis for the 5-7 cents figure." It explained that "inasmuch as AVB has the burden of proof, it was required to offer sufficient evidence for the court not only to conclude that there were valid warranty offsets, but also to form an evidence-based, non-speculative determination of the <u>value</u> of those claims. This AVB failed to do."

A defendant seeking setoff pursuant to section 431.70 bears the burden to establish a nonspeculative value of its demand. (See Evid. Code, § 500.) AVB asks us to adopt the seven-cents benchmark that the court specifically found not credible. But "it is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve

21

conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it."  (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 916.)  And we cannot simply pick a different number.  Absent any other basis to evaluate how much the warranty setoffs were worth, we uphold the trial court's conclusion that AVB failed to meet its burden.

## DISPOSITION

The judgment is affirmed.  Wanke is entitled to its costs on appeal.


DATO, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.